**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CARRIE ELLIS,<br><br>                    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No. 2:10-cv-01201-LDG -GWF<br><br>**REPORT AND<br>RECOMMENDATION**<br><br>Opening Brief (#15)<br>Cross-Motion to Affirm (#24) |

This case involves judicial review of administrative action by the Commissioner of Social Security denying Plaintiff Carrie Ellis' claim for disability benefits under Title II of the Social Security Act. Plaintiff's Complaint (#4) was filed September 24, 2010. Defendant's Answer (#11) was filed January 6, 2011, as was a certified copy of the Administrative Record (the "A.R."). *(See* #12) This matter has been submitted to the undersigned United States Magistrate Judge for Findings and Recommendations on Ellis' Opening Brief (#15), filed on February 22, 2011, and the Commissioner's Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Reversal and/or Remand (#24), filed on May 20, 2011.

**BACKGROUND**

Plaintiff Carrie Ellis seeks judicial review of Administrative Law Judge ("ALJ") Donald R. Colpitts' May 21, 2010 decision (A.R. 671-688). The issue before the Court is whether the Plaintiff was disabled during the period from February 21, 2001 until June 10, 2004.

**A.   Procedural History**

The procedural history of Plaintiff's disability claim is extensive and spans over a decade. The Plaintiff filed an application for supplemental security income in April or May of 1994, which was denied initially on August 29, 1994, and denied again on reconsideration on January 30, 1995. (A.R.

672.) Because Plaintiff did not appeal the denials, the decision denying benefits on that application was final and cannot be reopened or revised.

Plaintiff again filed an application for supplemental security income on April 30, 1996. (A.R. 114-15.) This application was initially denied on July 26, 1996, and on reconsideration, the claimant requested a hearing. (A.R. 89, 95-98.) After the hearing, ALJ Daniel Loughry issued a decision denying Plaintiff's application because the ALJ found that Plaintiff had the residual functional capacity to perform "medium work." (Tr 230-37.) Plaintiff requested the Appeals Council to review this decision. On review, the Appeals Council vacated the decision and remanded the case for further proceedings. After an additional hearing on July 19, 2000, ALJ Sandra Rogers issued a decision, finding that the Plaintiff retained essentially a "sedentary work" residual capacity, and denied Plaintiff's application. (A.R. 243-50.) Plaintiff requested Appeals Council review, but it was denied. ALJ Rogers' July 19, 2000, decision is the final administrative decision of the Commissioner of Social Security on the Plaintiff's 1996 application and is not subject to being reopened or revised. (A.R. 243-250.)

The instant application was originally filed on February 21, 2001 (protective filing date). (A.R. 298.) In this application, Plaintiff alleged a disability from January 1, 1992 onward. (A.R. 298, 314.) After a hearing was conducted on May 7, 2003, ALJ Earl Waits issued a decision finding that the Plaintiff had a residual functional capacity to perform "medium work" and concluded that she was not disabled. (A.R. 16-22.) The Appeals Council declined to review the May 7, 2003 decision. (A.R. 25.) Plaintiff then sought review with the United States District Court for the Central District of California, Western Division (Case No. CV 03-6038 JWJ). On January 3, 2004, the court entered an order remanding the case to the Commissioner in accordance with a stipulation for remand agreed to by the parties. (A.R. 457-58.) On remand, the Commissioner was instructed to further develop the record by re-contacting the treating sources and applying provisions of *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), to determine whether circumstances had changed since Judge Roger's July 19, 2000 decision. (A.R. 458.) On February 25, 2004, the Appeals Council remanded the case to an ALJ for proceedings consistent with the court's order. (A.R. 464-65.)

A hearing was held on July 29, 2004, and on January 25, 2005, ALJ Weir issued a partially favorable decision finding that the presumption of continuing non-disability raised in *Chavez* had been

rebutted by the change in age category resulting from the Plaintiff turning age 50 on June 10, 2004. (A.R. 525-32.) ALJ Weir found that Plaintiff's residual functional capacity was the same as found by ALJ Roger in her July 19, 2000 decision. (*Id.*) ALJ Weir concluded that Plaintiff was not disabled at any time prior to June 10, 2004, but that Plaintiff was disabled after her 50th birthday on June 10, 2004. (A.R. 525-32.); *see also* Rule 201.12, of Table I, Appendix 2, Subpart P, Regulation No. 4.

Plaintiff requested Appeals Council review of the January 25, 2005 decision. (A.R. 541.) On January 31, 2006, the Appeals Council affirmed the finding of disability after the Plaintiff's 50th birthday, but remanded the case for further proceedings concerning the period prior to June 10, 2004. (A.R. 546-47) The Appeals Council noted that, although a residual functional capacity for a restricted range of sedentary work had been found, no vocational testimony had been taken. (A.R. 545-47.) The Appeals Council also noted there was no apparent attempt to contact Dr. Chester Barnes for clarification of his medical opinion concerning the Plaintiff's capabilities. (A.R. 546.)

After a further hearing, on March 30, 2007, ALJ Weir again issued a decision finding that the Plaintiff had not been disabled at any time prior to June 10, 2004. (A.R. 758-73.) Additionally, ALJ Weir considered newly introduced evidence that resulted in a finding the Plaintiff had retained the residual functional capacity to perform a full range of sedentary work. Plaintiff appealed this decision to the United States District Court (Case No. CV 07-4234 JWJ). (A.R. 739-40.) On March 4, 2008, the court again remanded the case to the Commissioner, in accordance with the stipulation of the parties, with instructions to attempt to develop the record from Dr. Barnes and document any attempts to do so. (A.R. 742.) On April 23, 2008, the Appeals Council remanded the case to the ALJ with instructions to further develop the record in regard to Dr. Barnes and consider the Plaintiff's residual functional capacity in light of any new evidence. (A.R. 743.) ALJ Colpitts' May 21, 2010 decision is in response to that order of remand.

**B.   ALJ Colpitts' May 21, 2010 Decision.**

In a written decision issued on May 21, 2010, ALJ Colpitts held that Plaintiff was not disabled, as defined in section 1614 (a)(3)(A) of the Act, at any time during the period from February 21, 2001, until June 10, 2004. (A.R. 688A). As a preliminary matter, the ALJ found that a presumption of continuing nondisability applies pursuant to Acquiescence Ruling 97-4(9) and the Ninth Circuit's

decision in *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).  This presumption can be rebutted only if the Plaintiff demonstrates a "changed circumstance."  AR 97-4(9) further provides that even if the presumption of continuing nondisability is rebutted, a subsequent adjudicator must adopt the residual functional capacity finding from the final decision on the prior claim in determining whether the Plaintiff is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding.

### 1. Presumption of Continuing Nondisability.

ALJ Colpitts found that the presumption of continuing nondisability was overcome in this case.  Specifically, ALJ Colpitts found that the x-ray evidence of degenerative joint disease of the lumbar spine, hip, and knee noted in Dr. Ahmed's April 11, 2002 report, and the diagnosis of depression in a consultative psychiatric examination on August 4, 2001, are sufficient to rebut the presumption of the continuing nondisability.

### 2. Adoption of the Previous Findings.

In determining if there was any new and material evidence introduced with respect to Plaintiff's residual functional capacity for the period of time from February 21, 2001, until June 10, 2004, ALJ Colpitts reviewed medical source statements from Dr. Barnes, Dr. Ahmed, Dr. Rocely Elia-Tamayo, Dr. Cunningham, Dr. Aguilar, Dr. Tienda, and Dr. Walburn.  After examining the medical source statements and examination notes, ALJ Colpitts found no new and material evidence had been introduced concerning the Plaintiff's residual functional capacity or vocational profile.

Therefore, pursuant to AR 97-4(9), ALJ Colpitts adopted the vocational profile and residual capacity found in ALJ Roger's July 19, 2000 decision.  The July 19, 2000 decision found the Plaintiff not disabled.  ALJ Rogers specifically found that the Plaintiff retained the residual functional capacity to "lift and/or carry 10 pounds, stand and/or walk up to three hours in an eight hour work day and occasionally climb, balance, stoop, crawl, kneel and crouch.  There are no limitations on her ability to sit, and Plaintiff is restricted from working around temperature extremes, chemicals, dust, fumes and humidity." (A.R. 243-50.)

After adopting these findings, ALJ Colpitts found that the Plaintiff was unable to preform any of her past work during the period from February 21, 2001 until June 10, 2004.  Based on the vocational

expert's December 2009 testimony that a person of the Plaintiff's age, education, and previous work experience who had the residual capacity found could perform approximately 60 percent of approximately 200 unskilled sedentary occupations, ALJ Colpitts found that there were a significant number of jobs in the national economy that the Plaintiff could have performed in the period from February 21, 2001 until June 10, 2004. ALJ Colpitts therefore concluded Plaintiff was not disabled. (A.R. 687-88.)

## DISCUSSION

### I. Standard of Review

Plaintiff seeks judicial review of the ALJ's decision determining that she was not disabled from the period of February 21, 2001 until June 10, 2004. Plaintiff's timely request for review by the Appeals Council was denied. When the Appeals Council denies a request for review, the decision of the ALJ represents the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff then filed this action seeking judicial review of the Commissioner's decision. *See* 20 CFR § 404.901(a)(5); 42 U.S.C. § 405(g). This matter was referred to the undersigned for a report of findings and recommendations pursuant to the provisions of 28 U.S.C. §§ 636 (b)(1)(B) and (C).

District courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). The statute provides, in relevant part, that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). 42 U.S.C. § 405 (g) provides that the district court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The Ninth Circuit reviews a decision of a district court affirming, modifying or reversing a decision of the commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). The findings may be set aside, however, if they are based on legal error or are not

supported by substantial evidence. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3rd 715, 720 (9th Cir. 1998); *see also Smolen*, 80 F.3d at 1279 (holding that courts must weigh both the evidence that supports and the evidence that detracts from the Commissioner's conclusion). Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson,* 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *Id*. If the evidence can reasonably support either affirming or reversing the ALJ's decision, the court may not substitute its judgment for the ALJ's judgment. *Flaten v. Sec'y of Health and Human Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin*, 654 F.2d at 635 (*citing Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence under 42 U.S.C. § 405(g), the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

II. **Disability Evaluation Process**

To qualify for disability benefits under the Social Security Act, a claimant must show that:

(a) he suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

(b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If a claimant establishes an inability to perform his prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Batson*, 157 F.3d at 721.

A plaintiff seeking Social Security disability benefits is also required to prove that he became disabled on or before his date last insured ("DLI"). *Flaten*, 44 F.3d at 1458-1459; *see also* 20 C.F.R. § 404.1520; *Morgan v. Sullivan,* 945 F.2d 1079, 1080 (9th Cir. 1991) (*per curiam*). To qualify for social security disability benefits, a claimant must be fully insured and have at least twenty quarters of coverage in the forty-quarter period which ends in with the quarter in which the disability occurred. *See* 42 U.S.C. §§ 416(i)(3), 423(c)(1); 20 C.F.R. § 404.130(b). "[T]estimony from family, friends, and neighbors are all relevant to the determination of a continuously existing disability with onset prior to expiration of insured status." *Flaten*, 44 F.3d at 1461 n.5 (*citing Hartman v. Bowen*, 636 F. Supp. 129 (N.D. Cal. 1986)). The requirement that an individual seeking benefits be insured at the time the individual suffers the disability is intended to "encourage individuals who have previously suffered from a disability to return to substantial gainful employment when their medical condition improves sufficiently to allow them to do so." *Flaten*, 44 F.3d at 1459 (*citing* S. Rep. No. 1856, 86th Cong., 2d Sess. (1960), *reprinted in* 1960 U.S.C.C.A.N. 3608, 3623-3625).

**A.    Application of the Presumption of Continuing Non-Disability**.

The posture of this case is different than most Social Security cases because the Plaintiff previously applied for and was denied social security benefits. Where there has been a final agency decision of nondisability, and the claimant subsequently files a new application, the prior administrative decision creates a presumption of continuing nondisability. *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). In order to overcome this presumption of continuing nondisability, the claimant "must prove 'changed circumstances' indicating a greater disability." *Id.* Acquiescence Ruling 97-4(9) provides guidance on the *Chavez* decision.

> In order to rebut the presumption of continuing nondisability, a claimant must prove "change circumstances" indicating a greater disability." In addition, the court indicated that where the claimant rebuts the presumption by proving a changed circumstance, principles of res judicata require that certain findings contained in the final decision by the ALJ on the prior claim must be given some res judicata consideration in determining whether the claimant is disabled... The court concluded that where the final decision on the prior claim, which found the claimant not disabled, contained findings of the claimant's residual functional capacity, education, and work experience, SSA may not make different finding in adjudicating the subsequent disability unless there is new and material evidence...

Although the presence of additional impairments rebuts the general presumption of nondisability, that alone is insufficient to rebut the specific findings of the prior decision. *See Chavez*, 844 F.2d at 694. Instead, there must be new and material evidence relating to each specific finding. AR 97-4(9). Evidence is "new" if the prior adjudicator did not consider it. HALLEX 1-2-9-40C. The Social Security Administration indicates that "material" evidence is evidence that would result in a different result than was previously obtained. *See* POMS GN 04010.030, SSR 65-51 and SSR67-22.

In this case, ALJ Colpitts found Plaintiff had rebutted the presumption of continuing nondisability. Neither party disputes this finding. The Plaintiff, however, challenges the ALJ's finding that no new and material evidence was introduced with respect to the Plaintiff's residual functional capacity for the period of time from February 21, 2001 until June 10, 2004. (A.R. 678.) In particular, Plaintiff challenges (1) whether the ALJ erred in not according the treating doctor's opinion heavier weight; (2) whether the ALJ erred in rejecting the symptom testimony of Plaintiff; and (3) whether the ALJ erred in not propounding a complete hypothetical to the vocational expert.

**III.   Analysis and Findings**

Having reviewed, considered and weighed both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the Court finds the ALJ's decision is supported by substantial evidence. The Court further finds that the ALJ did not commit legal error.

    **A.**     **The ALJ Satisfied His Duty to Attempt to Further Develop the Record.**

As a preliminary matter, the Office of Disability Adjudication and Review satisfied its duty to further develop the record. It is well-established that the ALJ has "a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered." *Mayes v. Massanari*, 276

F.3d 453, 459 (9th Cir. 2001) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). On remand, the ALJ was instructed to contact Dr. Barnes for clarification of his treatment notes and to explain his reasoning and opinions. (A.R. 739.) ALJ Colpitts does not specifically note the attempts to contact Dr. Barnes in his May 23, 2011 decision. The record, however, indicates that three separate attempts to contact Dr. Barnes were made by ALJ James Quigley and Lead Senior Case Technician, Tina Mowatt. (A.R. 773-790.)  Two separate letters, dated August 13, 2008, and October 1, 2008, and a subpoena dated November 7, 2008, were sent to Dr. Barnes requesting additional information. (A.R. 773-790.) No additional clarification was received from Dr. Barnes. The Court finds that the Office of Disability Adjudication and Review substantially complied with the remand instructions to contact Dr. Barnes in an attempt to further develop the record.

      **B.**      **The ALJ's did not Err in Rejecting Dr. Barnes' Opinion.**

In holding that there was no new and material evidence that Plaintiff's disability increased in severity, ALJ Colpitts rejected the medical source opinions of Plaintiff's treating physician, Dr. Barnes. "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  If the treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it should be afforded more weight. 20 CFR 416.927(d)(2). The ALJ need not accept an opinion of a physician - even a treating physician - if it is conclusory and brief and is unsupported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Where the treating doctor's opinion is not contradicted by another doctor, it can be rejected only for "clear and convincing" reasons, and even if a treating physician's opinion is contradicted by another doctor, the treating physician's opinion may not be rejected without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Lester v. Charter*, 81 F.3d 821, 831 (9th Cir. 1996).

     Initially, Plaintiff argues that ALJ Colpitts' findings are inconsistent. Plaintiff points to the ALJ's findings that the x-ray evidence documenting degenerative joint disease of the lumbar spine, hip and knee and the evidence of a depressive disorder rebutted the presumption of a continuing disability,

but then the ALJ continued to find that there was no new evidence that Plaintiff's condition increased in severity after Dr. Barnes' 1997 assessment. Plaintiff argues this finding is inconsistent because in order to rebut the presumption of continuing nondisability, there would have had to be an increase in severity of Plaintiff's disability.

Application of AR 97-4(4) and *Chavez* however requires the ALJ to adopt the residual functional capacity from the final decision on the prior claim unless there is new and material evidence relating to that specific finding. Therefore, an ALJ can find the presumption of continuing nondisability has been rebutted, but still reasonably conclude there is no new and material evidence concerning the claimant's residual functional capacity. *Chavez*, 844 F.2d at 694. Although ALJ Colpitts found that the x-ray evidence and the evidence of a depressive disorder rebutted the presumption of continuing non-disability, he also found that this evidence was not "new and material" evidence relating to Plaintiff's residual functional capacity. ALJ Colpitts' findings are not inconsistent.

Plaintiff next challenges ALJ Colpitts' finding that there was no new and material evidence to support a change in Plaintiff's residual functional capacity. Plaintiff specifically points to Dr. Barnes' 2004 assessment indicating that Plaintiff would miss work more than three times per month; that she could only stand and walk for two hours in a workday; and that her symptoms would frequently interfere with her attention and concentration. Plaintiff argues Dr. Barnes' assessment should have been given more weight because he was in the best position to assess Plaintiff and his notes medically support his diagnosis and assessment. Plaintiff argues that ALJ Colpitts did not give clear and convincing reasons for rejecting Dr. Barnes' testimony.

A review of the record, however, shows that the ALJ properly analyzed the evidence and gave clear and convincing reasons for not accepting the opinions of Dr. Barnes. After reviewing Dr. Barnes' March 23, 2003, February 16, 2004, and February 5, 2007 medical source statements, ALJ Colpitts found Dr. Barnes' opinions inconsistent on many levels. ALJ Colpitts found that Dr. Barnes' opinions concerning the Plaintiff's ability to sit, stand and walk have varied in three different medical source statements, weighing against their credibility. (A.R. 679A.) In March 2003, Dr. Barnes indicated that Plaintiff could sit for a total of four hours and stand/walk for a total of four hours in a workday; in February 2004, Dr. Barnes indicated that Plaintiff could sit for two hours and stand/walk for two hours

in a workday; yet, in February 2007, Dr. Barnes indicated that Plaintiff could sit for a total of four hours and stand/walk for less than two hours in a workday. (A.R. 679A.)

These inconsistencies were even more troubling in light of Dr. Barnes' statement that the limitations contained in the 2007 medical source statements have been in effect since September 17, 1998. (A.R. 734.) Dr. Barnes' retrospective conclusion that the Plaintiff had the limitations identified in the 2007 medical source statement since 1998, contradicts his own previous findings in 2003 and 2004. (A.R. 431-33, 471-75, 730-34.) Further, Dr. Barnes' medical source statements in 2003, 2004, and 2007, indicated that the Plaintiff experienced pain or other symptoms severe enough to interfere with attention and concentration resulting in a limitation on her ability to deal with work stress and requiring her to be absent from work three or more times per month. These limitations however were not mentioned in Dr. Barnes' earlier medical source statements.

ALJ Colpitts identified further discrepancies in Dr. Barnes' medical source statements. The ALJ noted that Dr. Barnes' September 16, 1997 medical source statement indicates the Plaintiff suffered from carpal tunnel syndrome. (A.R. 680.) This finding was rejected in the ALJ's 2000 decision, and notably, none of Dr. Barnes' subsequent medical source statements mention carpal tunnel syndrome. ALJ Colpitts further notes that prior ALJ's have found inconsistencies in Dr. Barnes' medical source statements from December 10, 1998 to February 11, 1999. (A.R. 679A-680.)

Dr. Barnes' reports do not explain the basis for the Plaintiff's alleged deterioration in her residual functional capacity that became effective in 1998, as stated in the 2007 medical source statement. Although ALJ Colpitts acknowledges that the treatment notes are hand-written and difficult to read, the legible notes do not quantify any degree of limitation or severity of reported findings and do not support a deterioration of Plaintiff's function as of September 17, 1998, as alleged. (A.R. 680.) ALJ Colpitts noted that the September 17, 1998 medical source statement was of record at the time the July 19, 2000 decision was made and therefore does not constitute new evidence. (A.R. 680.) All attempts by the Social Security Administration to contact Dr. Barnes were unsuccessful, and the February 2007 medical source statement introduced by Plaintiff does not clarify or explain the inconsistencies. Ultimately, ALJ Colpitts concluded that Dr. Barnes' medical source statements are not supported by medically acceptable clinical and laboratory diagnostic techniques (20 CFR 416.927(d)(3)), are not

11

N/A
N/A

consistent with other substantial evidence in the record (20 CFR 416.927(d)(4)), and therefore are not entitled to controlling weight (20 CFR 416.927 (d)(2)). (A.R. 679A.)

ALJ Colpitts examined other medical source statements in determining whether Plaintiff's disability has increased in severity. The record shows that Plaintiff has a history of degenerative disc disease. ALJ Colpitts examined x-ray and examination notes from November 14, 2000, June 28, 2001, April 11, 2002, and January 10, 2003. ALJ Colpitts found that the weight of the evidence of Plaintiff's degenerative disc and joint disease only shows minimal to mild changes during the period at issue. The greater weight of the evidence does not show any significant progression of her degenerative disc disease. (A.R. 681.)

ALJ Colpitts examined the medical source statements relating to Plaintiff's asthma including medical source statements from March 13, 2000, January 2001, and June 28, 2001. The ALJ found these medical source statements did not support any increase in the severity of the Plaintiff's pulmonary condition or increased disability due to her lung disease. (A.R. 682.)

ALJ Colpitts found that the Plaintiff had a medically determinable impairment of depression from August 4, 2001 onward. However, after reviewing the evidence, ALJ Colpitts found that the Plaintiff's depression does not constitute a "severe impairment" nor would it limit her capacity to do work or otherwise affect her residual functional capacity prior to June 10, 2004. The record contains no evidence that Plaintiff's mental impairment caused a limitation on the activities of her daily living or any limitation in maintaining social functioning; only mild limitations in maintaining concentration, persistence or pace; and no evidence that the claimant has ever experienced episodes of decompensation of extended duration. The lack of limitations resulting from Plaintiff's mental impairment along with the conflicting medical source statements questioning if, indeed, Plaintiff does have a medically determinable mental impairment, led ALJ Colpitts to conclude that any mental impairment the Plaintiff did suffer, did not cause any increase in the severity of Plaintiff's disability during the relevant period of time. (A.R. 682-85.)

ALJ Colpitts also examined whether there was a deterioration in Plaintiff's vision as she has a lifelong history of left eye blindness. After reviewing relevant medical sources statements, ALJ did not find any deterioration in Plaintiff's vision. The medical evidence supports a finding that Plaintiff's

vision in her right eye is 20/20, and she has only slight decreased depth perception. (A.R. 685)

ALJ Colpitts did not err in finding there was no new and material evidence relating to Plaintiff's residual functional capacity, and his decision is supported by substantial evidence. ALJ Colpitts provided clear and convincing reasons for not relying on Dr. Barnes' opinion. The ALJ thoroughly examined the evidence in this case, and his decision is substantially supported by the record.

### C. The ALJ Did Not Err in Making a Credibility Determination Regarding Ms. Ellis' Testimony.

The ALJ found that Plaintiff's testimony regarding her subjective pain and symptoms was not credible. The Ninth Circuit has consistently held that "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982); *see also Allen v. Heckler*, 749 F.2d 577, 580 n.1 (9th Cir. 1985). "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallenes,* 881 F.2d at 750. However, the ALJ's credibility findings must be supported by specific, cogent reasons. *See Rahad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990); *see also Yuckert v. Bowen*, 841 F.2d 303, 307 (9th Cir. 1988). General findings are insufficient. Rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995); *see also Dodrill v. Shalala*, 12 F.2d 915, 918 (9th Cir. 1993). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. *See Lester,* 81 F.3d at 834. In weighing a claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *See Smolen*, 80 F.3d at 1284 (citations omitted).

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting the subjective pain testimony of Plaintiff. In 2009, Plaintiff testified that she cannot lift more that 5 pounds without pain; she cannot stand more than an hour a day, at least 3 to 5 times a day; she must use her breathing machine for 20 minutes to relieve her asthma; and she experiences significant side effects . . .

from her medications including sleepiness.  Plaintiff claims the ALJ erred in not considering Plaintiff's pain and symptom testimony.

ALJ Colpitts properly declined to rely on Plaintiff's testimony.  ALJ Colpitts found Plaintiff's testimony was disproportionate to the objective findings of the medical record, inconsistent with medical opinion evidence, exaggerated, and not fully credible. (A.R. 687.)  ALJ Colpitts also found the Plaintiff's testimony at the 2009 hearing was five and a half to nine years after the relevant time period, a passage of time that weighs against a finding of credibility.  *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

ALJ Colpitts also reviewed Plaintiff's prior testimony taken on January 23, 2003 and July 29, 2004.  The ALJ noted the residual capacity function found for the Plaintiff in the July 2000 decision accommodates functional limitations resulting from her degenerative disc disease and lung disease.  The ALJ noted that Plaintiff's testimony complaining of depression and anxiety related symptoms and functional limitations are not even attributable to a medically determinable impairment prior to April 2001.  *See* 20 CFR 416.929(c)(2) and (3).  Further, the ALJ noted Plaintiff stopped working in 1989, not because of physical or mental symptoms, but to care for her mentally disabled son. (A.R. 687.)  The ALJ concluded that although acting as a caretaker may have been difficult,  it does not weigh in favor of finding disability.  The Court finds that the ALJ provided clear and convincing reasons for his credibility finding, and his determination is supported by substantial evidence.

### D.     The ALJ Properly Relied on the Vocational Expert.

An ALJ's hypothetical questions to a vocational expert need only to include those limitations that are supported by the record.  In seeking expert vocational testimony and proffering hypothetical questions, an ALJ "must set out all the limitations and restrictions of the particular claimant." *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).  It is proper for an ALJ to limit a hypothetical to only those restrictions which are supported by substantial evidence in the record. *Id.* at 756-57.

Plaintiff contends that the ALJ failed to propound a complete hypothetical to the vocational expert, and therefore, the vocational expert's testimony was not accurate and complete.  Specifically, Plaintiff claims that the ALJ erred by not including left eye blindness as a severe impairment in the hypothetical to the vocational expert.

The ALJ noted that Plaintiff has a lifelong history of left eye blindness which has never prevented her from working in the past. The only additional evidence presented concerning Plaintiff's vision indicates that the Plaintiff's vision in her right eye is 20/20, with only slight decreased depth perception. (A.R. 391, 685.) The ALJ therefore adopted the findings from the 2000 decision, where the ALJ considered Plaintiff's left eye blindness and determined that it did not significantly affect her residual functional capacity. (A.R. 38, 246, 628, 639-640.)

The ALJ's hypothetical to the vocational expert tracked the residual functional capacity limitation findings of the July 2000 decision. The limitations in the hypothetical were supported by the record. The ALJ therefore did not err in propounding a hypothetical to the vocational expert. The vocational expert stated that he reviewed the Plaintiff's record prior to testifying, and displayed his knowledge of the Plaintiff's case by asking specific questions about the record. (A.R. 698-99.) Further, as Defendant points out, counsel for the Plaintiff was given an opportunity to ask questions of the vocational expert, and only asked one question, completely unrelated to Plaintiff's left eye blindness. The ALJ therefore did not err in considering the vocational expert's testimony.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Opening Brief/Motion for Remand (#15) be **denied** and the Commissioner's Cross-Motion to Affirm (#24) be **granted**.

DATED this 27th day of September 2011.

**GEORGE FOLEY, JR.**
**United States Magistrate Judge**